[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Mystic Oil, Inc., brings this summary process action against the above named defendants, alleging in a five-count complaint non-payment of rent (first count), violation of subsection 4A of the Lease which requires payment of rent on the 10th of every month (second count), violation of subsection 4D of the Lease which requires the disclosure of the monthly sales by the defendants to the plaintiff (count three), violation of subsection 4D of the Lease which requires the payment of any rental deficiency with interest (count four), and that the current occupiers of the property have no right or privilege to occupy the premises (count five).
Facts
On April 18, 1996, the plaintiff leased property on Route 27 in Mystic to the defendant Subway Real Estate Corp. ("Subway"), Connecticut, for a term of four years, to commence on May 1, 1996 and ending on April 30, 2000. Under the terms of the Lease, the Lease is automatically renewed for eight consecutive two (2) year periods. On September 18, 1996, the defendant Kevin Dixon ("Dixon") subleased the property from Subway. Dixon, soon thereafter, opened a Subway Franchise. Because Subway did not give notice to the plaintiff as required by the Lease, the Lease was extended for two years. In March 2002, Assif Hussaini took over the management of the franchise with the intent of purchasing the franchise at a later date. Also that month, the plaintiff sent a letter to Subway in which it stated that Subway had not been providing a copy of the gross sales statement submitted to the State of Connecticut as required by the Lease. On April 8, 2002, Dixon mailed the requested records to the plaintiff. Of note, three days prior to sending the records necessary for the plaintiff to calculate the rent, Dixon notified the plaintiff that the property was in need of repair. On April 18, 2002, the plaintiff informed Subway that it was in default of the Lease and that it owed the plaintiff $5,896.34 in back rent, inclusive of interest. On April 24, CT Page 4269 2002, Dixon responded to the plaintiff's default notice by stating that he had sold the franchise. On June 18, 2002, the plaintiff initiated this summary process action.
Counts One and Two
The resolution of counts one and two require essentially the same analysis because a failure to pay the rent due under the lease would require a finding for the plaintiff on both counts. The plaintiff claimed at trial that the defendant had not paid the full amount of rent due under the Lease by the tenth of following month. Because this case involves the analysis of numerous figures, the court has utilized several charts to assist in explaining its decision. There is no disagreement between the parties as to what rent was actually paid to the plaintiff. The court adopts the defendants' exhibit 6 as an accurate representation of the amounts paid each month by the defendants to the plaintiff. These numbers are substantiated by copies of canceled checks submitted by the defendants in exhibit 5. In Chart 1, which is attached to this decision, column B represents the rent paid by the defendants to the plaintiff.
According to the Lease, the rent to be paid to the plaintiffs is ten percent (10%) of the defendants' "gross sales." "Gross sales" is defined, in part, as the defendants' sales minus the taxes actually paid to the state by the defendant. Column C of Chart 1 represents the court's determination of what the defendants' sales were prior to any deductions. The court arrived at this finding by completing its own analysis of the defendant's control sheets (defendants' exhibits two and three).[1] Column D represents the Sales Taxes actually paid by the defendants to the state. There is no dispute between the parties as to the actual sales taxes paid. Column E represents the court's findings as to what the defendants' "gross sales" were. The court arrived at this conclusion, simply by subtracting column D from column C. Column F represents the court's finding as to the rent the plaintiff should have paid to the plaintiff for each of the corresponding months. This figure was arrived at by multiplying column E by ten percent (10%). Column G represents the shortage (except for the months of June 2000 and November 2001 in which there were overpayments) in rent due to the plaintiff. This results in an average monthly underpayment of $139.72 in rent to the plaintiff.
Because the defendants failed to pay the full amount of the rent due by the tenth day of the following month, the court holds for the plaintiff on counts one and two.
Count Three CT Page 4270
At trial, the plaintiff claimed that the defendants understated their gross sales by four percent (4%). Under the Lease, an understatement of gross sales by four percent (4%) or more is an automatic default under the lease. As can be shown by the testimony and exhibits submitted by the parties at trial, the amount of the defendants' "gross sales" has been greatly contested. Chart 4 summarizes the exhibits submitted by the parties. The Lease requires that the defendants submit a copy of its Sales and Use Tax Returns to the plaintiff every month with its rent. The Lease is structured so that the amount reported to the State of Connecticut will be the same amount reported to the plaintiff for the purpose of calculating the rent due. In accordance with the Lease, the court finds that the sales reported to the State of Connecticut in the plaintiff's exhibits I, II and K, minus the tax paid by the defendants, are the gross sales that were reported and/or constructively reported to the plaintiff.
Chart 3 represents the court's findings under the previously stated formula as to what the defendants reported to the plaintiff for "gross sales."[2] As explained in the previous section, the court finds the "gross sales" to be as stated in Chart 1, column E. On average, the defendants understated their "gross sales" by 11.69 percent.
The defendants understated their "gross sales" on average of 11.69 percent per month, in violation of subsection 4D of the lease, and, therefore, the court finds for the plaintiff on count three.
Count Four
At trial, the plaintiff claimed that the defendants failed to pay the deficiency with interest upon demand, as required by subsection 4D of the Lease. On April 18, 2002, the plaintiff demanded that the defendants pay it $5896.34 — the amount the plaintiff determined the defendants to be deficient. At trial, the plaintiff's expert did not sufficiently establish how it calculated the deficiency or the interest due on the deficiency. Furthermore, the court finds that the deficiency demanded was far in excess of the actual amount due.
The court finds that the plaintiff was not owed the deficiency it sought, and, therefore, the court holds for the defendants on count four.
Count Five
The plaintiff claimed at trial, that the defendants currently occupying CT Page 4271 the property have no right or privilege to occupy the property. At trial, the defendants submitted no evidence that Subway had subleased the property to anyone other than Dixon. According to the lease, only Subway may sublease the property. As such, the Hussaini and Rahmani brothers do not have an interest in the property. Therefore, the plaintiff need only succeed in the summary process action against Subway and Dixon. If successful, any party occupying the property under the authority of Subway or Dixon must vacate the property.
In counts one, two and three, the court has found for the plaintiff. As such, if the defendants do not prevail in their special defenses, any present occupier will be required to vacate the property. Even if the court were to find that there was a sublease between Subway and the current occupiers of the property, Hussaini and Rahmani brothers, the court would still have to enter judgment against them, if Subway did not prevail. "As a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the provisions of original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him . . . The sublessee's rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's [lease] based upon the [lessee's] nonperformance of obligations imposed on him." (Citation omitted; internal quotation marks omitted.) Woodbridge Associates v.Woodbridge Motors, Superior Court, judicial district of New Haven, Docket No. 94-0363427 (October 28, 1994, DeMayo, J.) (12 Conn.L.Rptr. 567). Thus, even if the Hussaini and Rahmani brothers did have a sublease, the court would still be forced to order their eviction because of Subway's failure to perform under the Lease.
Therefore, subject to any special defenses successfully asserted by the defendants, the court holds for the plaintiff on count five.
Special Defenses
Subway, in its only special defense, claims that all rent has been paid. The court, in its ruling on count one, has held for the plaintiff on this issue, and, therefore, this special defense has no merit.
Dixon, in his answer, raises two special defenses: (1) that the plaintiff violated the covenant of good faith and fair dealing, and (2) that if there was a deficiency, it was not willful or grossly negligent, and, therefore, the defendants would suffer a loss wholly disproportionate to the injury suffered by the landlord. CT Page 4272
As to the defense that the plaintiff violated the covenant of good faith and fair dealing, Dixon claims that because the audit of its gross sales was not conducted by a certified public accountant, and, because the plaintiff did not allow the defendants to verify the plaintiff's audit, the defendants should be absolved of all fault.
Subsection 4D does not require that a certified accountant conduct the audit. Nor does it require that an independent audit be conducted. Contrary to Dixon's claim, the Lease specifically allows the plaintiff to conduct its own audit. The plaintiff may have an independent audit conducted, but it need not if it so chooses.
Furthermore, the Lease does not state that the lessee will have the right to review the lessor's audit. There is no language in the lease that the court could find that would support Dixon's contention, nor does he cite to any. Dixon is an experienced business person, as is Subway. Either party could have asked for such language to be included. Therefore, the court holds that the defense has no merit.
Even if the court were to find in Dixon's favor on the defense, it would only be a defense to count four, and thus, counts one, two and three would still stand. The defendants still understated the gross sales and underpaid the rent.
In its second special defense, Dixon asserts that its breach was not willful or grossly negligent. The court has already held that the defendants understated their gross sales by over eleven percent (11%) per month. The court has also found that the defendants underpaid the rent, on average, by almost one hundred forty dollars ($140) per month.
"Equitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." Cumberland Farms, Inc. v. Dairy Mary,Inc., 225 Conn. 771, 778, 627 A.2d 386 (1993). "Willful or gross negligence in failing to fulfill a condition precedent of a lease bars the application of the doctrine of equitable forfeiture . . . In circumstances involving the nonpayment of rent, we have construed strictly this threshold requirement in deciding whether to grant equitable relief . . . We have also stated more recently, however, that the doctrine against forfeiture applies to failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of the lease." (Citations omitted; internal quotation marks omitted.) Id.
CT Page 4273
The court holds that Dixon's conduct was grossly negligent and willful because of its failure to pay rent, to accurately state its gross sales, and to provide the plaintiff with the Sales and Uses Tax Return as required under the lease. Dixon is an experienced business person and should not have any difficulty in determining its gross sales. A calculator and a basic understanding of math, or a personal computer and the appropriate software, could easily have remedied the situation. Therefore, the court holds that the defense has no merit. Furthermore, had the defendants shared their version of what their gross sales were, this issue could have been identified at the outset.
Accordingly, Judgment of Possession to the plaintiff enters.
Schimelman, J.
 CHART 1
[EDITORS' NOTE: THE CHART 1 IS ELECTRONICALLY NON-TRANSFERRABLE.]
 CHART 2
[EDITORS' NOTE: THE CHART 2 IS ELECTRONICALLY NON-TRANSFERRABLE.]
 CHART 3
[EDITORS' NOTE: THE CHART 3 IS ELECTRONICALLY NON-TRANSFERRABLE.]
 CHART 4
[EDITORS' NOTE: THE CHART 4 IS ELECTRONICALLY NON-TRANSFERRABLE.]